```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
HARRY L. FORE,

                    Plaintiff,
                                              MEMORANDUM & ORDER
          -against-                           18-CV-1658(JS)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:      Harry L. Fore, pro se
                    600 Franklin Avenue
                    P.O. Box 352
                    Garden City, New York 11530

For Defendant:      Candace Scott Appleton, Esq.
                    United States Attorney's Office
                    Eastern District Of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201
```

SEYBERT, District Judge:

Currently pending before the Court is defendant Commissioner of Social Security's ("Commissioner") motion to dismiss pro se plaintiff Harry L. Fore's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (Comm'r Mot., D.E. 11; Comm'r Br., D.E. 12; Pl. Opp., D.E. 14; Comm'r Reply, D.E. 16.) For the following reasons, the Commissioner's motion is GRANTED.

BACKGROUND

I. Plaintiff's Prior Social Security Fraud Conviction and Motion to Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C. § 2255

On January 30, 1997, a grand jury named Plaintiff in a 25-count indictment that charged him with fraudulent use of two social security numbers, mail fraud, and making false statements, in violation of 42 U.S.C. § 408(a) and 18 U.S.C. §§ 1341, 1001. See U.S. v. Fore, 169 F.3d 104, 106 (2d Cir. 1999). As described by the Second Circuit:

> Fore obtained two different social security numbers in 1971 and 1976, providing false information on his second social security number application. Using his first number, Fore unlawfully claimed and received social security disability benefits for himself and his dependents in the amount of $66,000 for the period of July 1989 through February 1996. The benefits were unlawful because Fore was not disabled and actually worked during that time. Fore used his second social security number in connection with his employment at Friendly's restaurant between April 1989 and April 1990 and Carey Transportation between March 1992 and February 1993. During the time he worked for Carey Transportation, Fore made three workers compensation claims using the second social security number, including a claim for which he received $19,000 from Aetna Casualty and Surety Company between March 1993 and November 1994. In connection with the third workers compensation claim, Fore's physician completed medical reports known as "C-4" forms and mailed them to the insurance company between September 1993 and November 1994. These mailings provided the basis for the 14 counts of mail fraud with which Fore was charged.
>
> In September 1993, Fore applied for a job as a custodian with the U.S. Postal Service, using his first social security number. He made false statements on his government employment application because he did not disclose the second social security number, his full

2

> work history, or his prior claims regarding disability
> and workers compensation. Fore worked for the postal
> service between October 1993 and May 1994.

Id. at 106-07. On October 23, 1997, after a trial before the undersigned, a jury convicted Plaintiff on all 25 counts.[1] (See No. 97-CR-0108, D.E. 33.) On January 20, 1998, this Court sentenced Plaintiff to 25 concurrent terms of 27 months and to 3 years of supervision upon his release from prison. (See No. 97-CR-0108, D.E. 43 and 44.) As a condition of supervised release, among others, Plaintiff was required to pay restitution in the amount of $89,680.53. (See No. 97-CR-0108, D.E. 43 and 44.)

Plaintiff appealed his conviction to the Second Circuit. Among other things, the Second Circuit held that Plaintiff did not suffer a constitutional deprivation by proceeding pro se at trial and that his decision to waive counsel was "knowing and intelligent" and that he "considered and understood the ramifications of his choice." Fore, 169 F.3d at 108-09. The Second Circuit also affirmed the Court's restitution order to the extent the Court "imposed restitution payments to SSA as a condition of [Plaintiff's] supervised released." Fore, 169 F.3d at 110. The Second Circuit vacated the "portion of the restitution

---

[1] On September 9, 1997, Plaintiff informed the Court "that he wanted to represent himself at trial because 'no one [knew] what [he] was going through at this particular time better than [he] did.'" Fore, 169 F.3d at 107 (alterations in original). Although the undersigned warned Plaintiff "of the dangers of proceeding pro se," Plaintiff did not change his mind. Id.

3

order directing payment to Cigna." Id. at 109-10. On remand, this Court amended the judgment to read: "The following restitution amount is deleted from the prior judgment, as directed by the Second Circuit: CIGNA: $4,420.00. As a result the restitution amount is decreased by $4,420.00 making the restitution amount $85,260.53." (No. 97-CR-0108, D.E. 80.)

On April 8, 1999, Plaintiff, proceeding pro se, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (See No. 99-CV-2140, Pet., D.E. 1.) Plaintiff argued, among other things, that his conviction was obtained in violation of his constitutional rights because he was pro se and mentally incompetent. (See No. 99-CV-2140, Pet.) On November 2, 2001 the Court denied Plaintiff's motion. (No. 99-CV-2140, Nov. 2, 2001 Order, D.E. 17.) The Court construed Plaintiff's claim of mental incompetence to allege that he was "mentally incompetent at the time of trial and, therefore, his constitutional rights were violated and also to argue that Petitioner did not previously bring any of the claims brought in the § 2255 proceeding because he was mentally incompetent and proceeding pro se." (Nov. 2, 2001 Order at 6.) The Court found that his mental impairment arguments were an attempt to "relitigate the determination of this Court, which was affirmed by the Court of Appeals, that Petitioner was competent at the time of trial and is therefore barred." (No. 99-CV-2140, Nov. 2, 2001 Order at 7.)

4

II. <u>Plaintiff's 1985 and 2000 Benefits Applications and Decisions</u>

On November 5, 1985, an Administrative Law Judge ("ALJ") determined that Plaintiff was entitled to a period of disability beginning December 13, 1983. (Appeals Council Notice, D.E. 14, at ECF p. 1617; Nov. 5, 1983 Determination, D.E. 1-7, at ECF pp. 14-21.) Plaintiff's disability ceased as a result of substantial gainful activity in April 1989 and his entitlement to a period of disability and disability insurance benefits terminated at the end of June 1989. (Appeals Council Notice at ECF p. 17.)

In 2000, Plaintiff reapplied for a period of disability, disability insurance benefits, and supplemental security income (the "2000 Benefits Application"). (Appeals Council Notice at ECF p. 17.) The Social Security Administration ("SSA") approved Plaintiff's claim for only supplemental security income (the "2000 Benefits Decision"). (Appeals Council Notice at ECF p. 17.) Plaintiff's claim for Title II[2] (disability) benefits was denied for failure to establish disability through the date he was last insured, <u>i.e.</u> 1995. (Appeals Council Notice at ECF p. 17.) In

---

[2] "Title II provides for payment of disability benefits to disabled individuals who are 'insured' under the [SSA] by virtue of their contributions to the Social Security trust fund through the Social Security tax on their earnings, as well as to certain disabled dependents of insured individuals. Title XVI provides SSI payments to disabled individuals (including children under age 18) who have limited income and resources." <u>See</u> https://www.ssa.gov/disability/professionals/bluebook/general-info.htm.

5

2009, the SSA conducted a continuing disability review that considered disability under both Titles II and XVI. (Appeals Council Notice at ECF p. 17.) However, that determination was issued in error because Plaintiff was "not found disabled in 2000 for purposes of entitlement to a period of disability and disability insurance benefits" and the "continuing disability review should have only referenced eligibility for supplemental security income." (Appeals Council Notice at ECF p. 17.) Plaintiff never appealed the 2000 Benefits Decision.

III. <u>Plaintiff's 2014 Disability Benefits Application and Decision</u>

On September 25, 2014, Plaintiff filed an application for disability insurance benefits alleging disability beginning December 13, 1983. (2014 App., Prelle Decl., Ex. 1, D.E. 12-1, at ECF pp. 4-11.) On October 8, 2014, the SSA sent Plaintiff a "Notice of Disapproved Claim," informing him that he did not qualify for disability benefits based on <u>res judicata</u>. (Oct. 8, 2014 Notice, Prelle Decl., Ex. 2, D.E. 12-1, at ECF pp. 12-14.) Plaintiff requested reconsideration[3] on the basis that "circumstances ha[ve] changed." (2014 Reconsid. Req., Prelle Decl., Ex. 3, D.E. 12-1, at ECF p. 15.) On January 12, 2015, the

---

[3] Plaintiff submitted a "Request for Hearing by Administrative Law Judge" but a handwritten notation indicates it was "accepted in place of 561." (2014 Reconsid Req. at ECF p. 15.) The SSA's website indicates that Form SSA-561 is a "Request for Reconsideration." <u>See</u> https://www.ssa.gov/forms/ssa-561.pdf.

6

SSA denied Plaintiff's request for reconsideration finding that "[t]he date you are last insured for Social Security Disability is 12/31/95," and that Plaintiff's "disability ended 6/09," and Plaintiff did not appeal that decision. (Jan. 12, 2015 Denial, Prelle Decl., Ex. 4, D.E. 12-1, at ECF p. 16-18.) Plaintiff's request for reconsideration was also denied even considering claims that Plaintiff's disability worsened in January 2000 "because of a lack of insured status." (Jan. 12, 2015 Denial at ECF pp. 16.)

On March 27, 2015, Plaintiff requested a hearing before an ALJ to "appeal" the denial of his request for reconsideration. (Mar. 2015 Hearing Req., Prelle Decl., Ex. 5, D.E. 12-1, at ECF p. 19.) Specifically, Plaintiff sought to appeal the portion of the denial that indicated benefits ended on "06/09," "a letter was sent on 08/10/09," and that Plaintiff "failed to appeal within sixty (60) days." (See Mar. 2015 Hearing Req.) On March 10, 2017, an ALJ dismissed Plaintiff's request for a hearing on the ground that <u>res judicata</u> barred his application. (Mar. 2017 Denial, Prelle Decl. Ex. 6, D.E. 12-1, at ECF p. 20-24, at 23.) Specifically, the ALJ stated:

> The record shows that the claimant previously filed applications for a period of disability, disability insurance benefits, and supplemental security income that were denied in a determination dated

7

> January 12, 2015.[4] This determination, which was issued after the claimant's insured status expired on December 31, 1995, became administratively final because the claimant did not request review within the stated time period.

(Mar. 2017 Denial at ECF p. 23.) The ALJ did not extend the deadline for review because, at the time of the 2000 Benefits Decision, "the claimant did not have or allege having a mental impairment [and] none of the conditions for reopening set forth in 20 CFR § 404.988[5] [are] present in this case." (Mar. 2017 Denial at ECF p. 23.) The ALJ also compared the facts and issues alleged in the "previous determination with that relating to [Plaintiff's] current claim" and found "no new and material evidence has been submitted and [ ] there has been no change . . . concerning the facts and issues ruled upon in connection with the previously adjudicated period." (Mar. 2017 Denial at ECF pp. 23-24.)

On April 7, 2017, Plaintiff requested a review of a "hearing decision/order" to the Appeals Council because the ALJ "lied an[d] said [Plaintiff] was unrepresented [and had] no mental impairment" and the ALJ "failed to apply

---

[4] This date appears to be incorrect and the Court assumes it refers to the 2000 Benefits Application and Decision.

[5] 20 CFR § 404.988 provides the conditions for reopening SSA decisions.

8

20 C.F.R. § 404.988(7)(8)."[6]  (2017 Review Req., Prella Decl., Ex. 7, D.E. 12-1, at ECF p. 25.)

On October 25, 2017, the Appeals Council issued a notice denying Plaintiff's request for review.  (Appeals Council Notice at ECF pp. 16-17.)  The Appeals Council reviewed medical evidence from Dr. Deleon Blanco, dated April 1, 1999 and E. Travis, D.D.S, dated May 3, 1999 and found they did "not relate to the period at issue" and therefore did not "affect the decision about whether [Plaintiff was] disabled beginning on or before December 31, 1995."  (Appeals Council Notice at ECF p. 17.)  The Appeals Council next detailed Plaintiff's disability determination history (see BACKGROUND, Section II, supra) and concluded that the ALJ's "dismissal of the request for hearing was appropriate." (Appeals Council Notice at ECF p. 17.)

On March 16, 2018, Plaintiff commenced this action seeking review of the Appeals Council's October 25, 2017 denial. (See Compl., D.E. 1; see also Compl., Ex. A., D.E. 1-1, at ECF pp. 2-3.)  The Complaint avers that Plaintiff did not receive the Appeals Council's Notice before March 1, 2018, the date he alleges his attorney provided him with a copy.  (See Compl. at ECF p. 2;

---

[6] Plaintiff also submitted a copy of his request to the Appeals Council, however, in addition to his claims that the ALJ (1) lied and (2) failed to apply 20 CFR § 404.988, Plaintiff's copy includes the phrase "clerical errors."  (Mar 2015 Hearing Req., D.E. 14, at ECF p. 13.)

9

Compl., Ex. A., at ECF pp. 2-5.) Plaintiff asks the Court excuse his "late filing" due to mental illness. (See Compl., Ex. A., D.E. 1-1, at ECF p. 2.) Plaintiff also argues that he "failed to establish insured disability through the year 2000" because "[D]efendant failed to apply all of the [P]laintiff['s] earnings from 1989 to 1995" and that he was denied due process because the Commissioner committed a "clerical error" warranting the re-opening of the 2000 Benefits Decision pursuant to 20 CFR § 404.988(7)(8). (Compl., Ex. A., at ECF p. 3, ¶¶ 3-4.)

Specifically, the Complaint alleges that it was error for the Commissioner to find Plaintiff's benefits ended in 1995 when the "SSA 7005-sm-s1 form clearly shows [ ] [P]laintiff worked in 1995," and that he deserves "extra credit" for being a member of the U.S. Military. (Compl., Ex. A., at ECF p. 4.) The Complaint also alleges that the Commissioner disseminated false information by stating that (1) the issues raised in Plaintiff's 2014 Benefits Application were the same as in previous applications, (2) Plaintiff was unrepresented, and (3) Plaintiff had no mental impairment. (Compl., Ex. A., at ECF p. 4, ¶ 6.)

DISCUSSION

I. Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v.

10

U.S., 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Morrison v. Nat'l Australia Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008). The Court must accept as true the factual allegations contained in the complaint, but it will not draw argumentative inferences in favor of Plaintiff because subject matter jurisdiction must be shown affirmatively. See id.; Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova, 201 F.3d at 113.

II. Analysis

The Commissioner argues that the Court lacks subject matter jurisdiction over the Complaint because the Appeals Council's decision affirming the ALJ's decision to not grant a hearing based on res judicata is not a judicially reviewable final decision. (Comm'r Br. at 5-7.) Plaintiff responds that res judicata does not bar his claim "where there is a continuing wrong like the clerical error in this case." (Pl. Opp. at ECF p. 1.) According to Plaintiff, the Commissioner violated Plaintiff's procedural due process rights by failing to credit Plaintiff for work credits "earned" at "Friendly['s] between April 1989 and April

11

1990 [and] at Carey Transportation between March 1992 and February 1993" while using his fraudulently obtained second social security number. (See generally Pl. Opp. at ECF p. 1.)

A. The Court Lacks Jurisdiction

"Judicial review of the Commissioner's adjudications of claims arising under Title II of the Social Security Act ("the Act") is provided for and limited by 42 U.S.C. §§ 405(g) and (h)." Ramos v. Astrue, No. 11-CV-6204, 2012 WL 2358158, at *1 (E.D.N.Y. June 20, 2012). "According to § 405(g), judicial review is authorized only after a 'final decision of the Commissioner of Social Security made after a hearing.'" Id. (citation omitted). Moreover, "[t]he law is clear that district courts do not have jurisdiction to review the SSA's res judicata determinations unless a plaintiff presents a colorable constitutional claim." Orozco v. Barnhart, No. 05-CV-6083, 2006 WL 1276737, at *2 (S.D.N.Y. May 10, 2006) (collecting cases). Accordingly, there is no final decision for the Court to review and the Complaint must be dismissed unless Plaintiff presents a "colorable constitutional claim." Id.

B. Plaintiff Has Not Presented a Colorable Constitutional Claim

"The Commissioner's decision not to reopen a prior determination is generally not subject to judicial review." Pataro v. Berryhill, No. 17-CV-6165, 2019 WL 1244664, at *12 (S.D.N.Y.

12

Mar. 1, 2019), R&R adopted, 2019 WL 1244325 (S.D.N.Y. Mar. 18, 2019) (citing Califano v. Sanders, 430 U.S. 99, 107-08, 97 S. Ct. 980, 985-86, 51 L. Ed. 2d 192 (1977)). However, the Court may "review the Commissioner's decision not to reopen a disability application under two limited exceptions: 'where the Commissioner has constructively reopened the case and where the claimant has been denied due process.'" Ramos, 2012 WL 2358158, at *2 (quoting Byam v. Barnhart, 336 F.3d 172, 180 (2d Cir. 2003)). A case is "'constructively reopened when the ALJ 'reviews the entire record and renders a decision on the merits.'" Id. Here, the ALJ did not review the entire record and therefore this exception does not apply. See, e.g., Bigelow v. Astrue, No. 08-CV-6450, 2009 WL 1955750, at *4 (W.D.N.Y. July 6, 2009) ("Indeed, even if the Appeals Council considers the merits of a claimant's request for reconsideration, 'where the discussion of the merits is followed by a specific conclusion that the claim is denied on res judicata grounds, the decision should not be interpreted as re-opening the claim and is therefore not reviewable'") (quoting Krumpelman v. Heckler, 767 F.2d 586, 589 (9th Cir. 1985)).

Rather, Plaintiff argues that the Commissioner's failure to account for his "work credits" was an unconstitutional deprivation of property. (See Pl. Opp. at ECF p. 2 (asserting a violation of procedural due process).) Plaintiff obtained these work credits while using his second social security number. (See

13

BACKGROUND, Section I, supra.) The Court cannot find any source holding that there is a constitutionally protected property interests in work credits "earned" by using a fraudulently obtained social security number. Absent law to the contrary, the Court declines to carve out a constitutional right protected by procedural due process where, as here, a jury convicted Plaintiff for fraudulently obtaining, and then using, the second social security number. See Fore, 169 F.3d at 106-07.

To the extent Plaintiff argues he was denied procedural due process because the ALJ did not hold a hearing with respect to his request to reopen the 2000 Disability Decision, "the Commissioner is not required to hold a hearing before invoking res judicata to deny such a claim." Bigelow, 2009 WL 1955750, at *5 (citing Yeazel v. Apfel, 148 F.3d 910, 912 (8th Cir. 1998)).

Moreover, although Plaintiff never appealed the 2000 Benefits Decision, he asks the Court to excuse his belated request to reopen the 2000 Benefits Decision because a mental impairment prevented him from timely doing so. (See generally Compl; Pl. Opp.) "'A claimant suffering from mental illness raises a colorable constitutional claim when he asserts that his mental illness precluded him from litigating his claim because it prevented him from proceeding from one administrative level to another.'" Vaswani v. Barnhart, No. 05-CV-8539, 2007 WL 2412262, at *3 (S.D.N.Y. Aug. 23, 2007) (quoting Byam, 336 F.3d at 182).

14

"To establish this type of claim, a claimant must make a 'particularized allegation of mental impairment plausibly of sufficient severity to impair comprehension.' The Byam standard requires inquiry into not only whether the claimant could understand administrative and legal procedures, but also whether she could pursue these procedures." Id. (quoting Byam, 336 F.3d at 182-83.) Moreover, a plaintiff cannot rely "upon a generalized allegation, long after the fact, that the claimant was too confused to understand available administrative remedies." Stieberger v. Apfel, 134 F.3d 37, 41 (2d Cir. 1997).

Plaintiff submits (1) a medical evaluation form, dated April 27, 1999, indicating a possible schizophrenia diagnosis (Pl. Opp., at ECF p. 9) and (2) a memorandum, dated April 1, 1999, summarizing a mental status exam of Plaintiff (Pl. Opp., at ECF p. 10). These records fail to demonstrate that Plaintiff's mental impairment prevented him from "understand[ing] administrative and legal procedures" and from "pursu[ing] these procedures" in the year 2000. Vaswani, 2007 WL 2412262, at *3. To the contrary, the medical forms pre-date Plaintiff's 2000 Benefits Application. Therefore, notwithstanding his medical diagnoses, Plaintiff understood the administrative and legal procedures to follow to file a request for benefits. Indeed, Plaintiff appealed his criminal conviction and the Court's denial of his habeas petition to the Second Circuit. (See DISCUSSION supra.) Moreover, at or

15

around the time Plaintiff submitted his 2000 Benefits Application, Plaintiff raised the issue of his mental impairment in an appeal before Veterans Affairs (see discussion at VA Appeal Decision, D.E. 1-7, at ECF p. 9) and in his habeas petition before this Court (see DISCUSSION supra). In fact, the April 27, 1999 medical evaluation form submitted here was also attached to Plaintiff's habeas petition. (See No. 99-CV-2140, Pet.) Further, as detailed by the Commissioner, "Plaintiff was able to pursue the processing and continued receipt of SSI benefits for years" and "filed the necessary paperwork to" select a representative payee. (See Comm'r Reply at 4; see also Pl. Opp., at ECF pp. 25-27.) Plaintiff's 2014 Disability Application also indicated that "[t]he circumstances had changed," and not that he was prevented from appealing the 2000 Disability Decision on the grounds that mental illness prevented him from timely doing so. (See 2014 Reconsid. Req.) Thus, Plaintiff's mental impairment did not prevent him from proceeding from one administrative level to another and there has been no violation of due process that would justify the Court's review despite Plaintiff's failure to satisfy Section 405(g).

C. No Private Right of Action

"There is no private right of action under the Social Security Act." Katsoulakis v. Astrue, No. 10-CV-0081, 2011 WL 3877080, at *5 (E.D.N.Y. Aug. 31, 2011). Even assuming that the Court has subject matter jurisdiction over this action,

16

Plaintiff's claims still fail to state a claim for which relief may be granted. Indeed, "to the extent plaintiff is attempting to allege violations of [his] constitutional rights by the SSA, the SSA is immune from suit." Katsoulakis, 2011 WL 3877080, at *5 (explaining that Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) bars actions against a federal agency).

    D.    <u>The Court's Restitution Order</u>

Finally, Plaintiff asks the Court to vacate the restitution order arising out of his criminal conviction because he is "permanently disabled." (Pl. Opp. at ECF p. 3.) This request is denied. As stated, the Second Circuit affirmed the Court's restitution order to the extent it was imposed "as a condition of [Plaintiff's] supervised released." Fore, 169 F.3d at 110. Thus, the Court's restitution order requiring Plaintiff to pay $89,680.53 was affirmed and remains valid as a condition of supervised release.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

CONCLUSION

Accordingly, the Commissioner's motion (D.E. 11) is GRANTED and the Complaint is DISMISSED with prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of an appeal. Coppedge v. U.S., 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21, 8 L. Ed. 2d 21 (1962). The Clerk of the Court is directed to enter judgment accordingly and to mark this case CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March  24 , 2020
        Central Islip, New York

18